# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| JOE NATHAN GOODWIN and NATASHA DAKON, *Plaintiffs*, v. CRAWFORD COUNTY, GEORGIA, *et al.*, *Defendants*. | CIVIL ACTION NO. 5:18-cv-00030-TES |

## ORDER ON DEFENDANTS' MOTION IN LIMINE

Before the Court is Defendants Hollis and Neesmith's motion in limine [Doc. 78] in which they ask the Court to exclude the following evidence at trial: certain video evidence of the removal of the dog's head, noncompliance with protocols of the Crawford County health department, and the results of the dog's rabies test pursuant to Federal Rules of Evidence 401, 402, and 403. [Doc. 78-1, p. 1]. The Court held an evidentiary hearing and discussed the instant motion in limine with the parties. During the hearing, the Court reviewed six video exhibits at Defendants' request. After hearing from both sides on the issues raised in this motion, the Court informed the parties that evidence that Plaintiff felt forced by the Defendants to remove his dog's head is admissible to the extent such evidence provides context for Goodwin's unlawful arrest claim or shows the officers interacting with Goodwin. *See generally* [Doc. 84]. However,

because the Court has already dismissed Goodwin's substantive due process claim against the officers for arbitrarily coercing him into removing his dog's head, it will not permit evidence that seeks solely to further that claim. *Id.*; *see* [Doc. 76]. As explained in greater detail below, the Court **GRANTS in part** and **DENIES in part** Defendants' motion.

## BACKGROUND

On December 1, 2017, Deputy Neesmith was dispatched to Goodwin's home in response to a complaint involving his dog. When Neesmith got there, he shot Goodwin's dog, "Big Boy," after the dog charged at him. Not long after the dog's death, Investigator Hollis showed up and deliberated with Neesmith about what to do next, with Goodwin present. After learning he may be forced to remove his dog's head, Goodwin instructed the officers to leave his premises. The officers declined to do so and restrained Goodwin against his car. The officers then remained on the scene as Goodwin ultimately cut his dog's head off and placed the head in a bag so that it could be tested for rabies.

Based on these events, Goodwin asserted claims against multiple defendants, including Deputy Neesmith and Investigator Hollis, based on 42 U.S.C. § 1983 and Georgia law. The Court dismissed all claims against Defendants—including Goodwin's Fourteenth Amendment substantive due process claim against the officers for arbitrarily coercing him into removing his dog's head—except for Goodwin's unlawful

2

arrest claim against Hollis and Neesmith.[1] Defendants now move to exclude the aforementioned evidence.

## DISCUSSION

### A. Framework for Determining if Evidence is Admissible

The exclusion requests hinge on relevance or, in the alternative, the danger of unfair prejudice. Federal Rule of Evidence 401 provides the test for relevancy. It provides that evidence is relevant if (1) "it has any tendency to make a fact more or less probable than it would be without the evidence" and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401. If the contested evidence does not meet this test, it is irrelevant and inadmissible. *See* Fed. R. Evid. 402. However, even if the evidence is relevant, it may still be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Excluding evidence under Rule 403 should not be done haphazardly, but sparingly and with restraint. *See Wilson v. Attaway*, 757 F.2d 1227, 1242 (11th Cir. 1985). Even though harmful evidence is "inherently prejudicial," it is only when the "unfair prejudice substantially outweigh[s its] probative value, which permits exclusion of [a] relevant matter under Rule 403." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).

---

[1] The Court also dismissed Natasha Dakon, Goodwin's wife, as a Plaintiff.

Plaintiff's only remaining claim is the § 1983 claim against Hollis and Neesmith for unlawful arrest. [Doc. 76]. Damages recoverable for an unlawful arrest claim include the time spent detained "and for any damages directly resulting from that detention." *See Barts v. Joyner*, 865 F.2d 1187, 1195 (11th Cir. 1989). These damages could include "suffer[ing] because of the use of force in effecting the arrest" even absent a discrete excessive force claim. *Bashir v. Rockdale Cty.*, 445 F.3d 1323, 1332 (11th Cir. 2006). However, Goodwin cannot attempt to recover from his now-dismissed substantive due process claim because his unlawful arrest claim is separate and distinct from his already-dismissed claim of being coerced into removing his dog's head.

### B. Evidence of the Removal of Goodwin's Dog's Head

As evidence for the unlawful arrest claim, the dog's head removal carries some probative value as it completes the overall narrative for the remaining claim by illustrating the context and background for the alleged detainment. For example, the evidence helps explain (1) why the officers remained on the scene after Neesmith shot Goodwin's dog, (2) why Goodwin insisted that the officers leave his property, and (3) why the officers declined to do so. Further, the evidence showing the officers monitoring and interacting with Goodwin while he removes his dog's head has high probative value for whether the officers detained Goodwin and, if so, for how long. Thus, evidence of the removal of the dog's head cannot be entirely separated from the remaining unlawful arrest claim.

With the above framework in mind, the Court will first consider whether the six video exhibits (or portions of them) provided by Defendants should ultimately be excluded:

1. Exhibit 1— Video of the removal of the dog's head

2. Exhibit 2— News clip of Goodwin describing his version of the events

3. Exhibit 3— Video of Goodwin's physical encounter with the officers and the dog's head removal

4. Exhibit 4— Cleaner version of the part of Exhibit 3 showing the dog's head removal.

5. Exhibit 5— Video of Goodwin's physical encounter with the officers

6. Exhibit 6— Neesmith's patrol car's dashcam footage of the entire incident.

First, the Court will examine Exhibit 2, the news clip containing an interview with Plaintiff describing how he felt when he removed his dog's head. In the context of the unlawful arrest claim, the video is clearly irrelevant. For example, the news clip, in and of itself, does not make Goodwin's arrest and length of detainment more or less probable. Further, Goodwin can testify at trial to his encounter with the officers. Accordingly, Exhibit 2 is excluded.

Next, the Court examines the video segments showing the physical altercation between Goodwin and the officers, Exhibit 3 from 0:00:00 to 0:00:45, Exhibit 5, and portions of Exhibit 6. These parts of the exhibits are directly relevant because Goodwin's physical altercation with the officers—and the events leading up to and following the

5

encounter—are critical for his unlawful arrest claim. Therefore, the Court will not exclude these segments (or specific portions) at this time.

Third, the Court considers the video segments depicting the dog's head removal, contained in Exhibits 1 and 4 and portions of Exhibits 3 and 6. Exhibit 1 shows Goodwin removing his dog's head while Hollis stands over him. The second part of Exhibit 3, starting at 0:00:45 to the end of that recording at 0:01:34, shows Goodwin placing his dog's head in a grocery bag as Neesmith and Hollis can be heard in the background giving instructions for transporting the dog's head to Goodwin's wife, Dakon. Exhibit 4 is a cleaner version of the latter part of Exhibit 3 (after 0:00:45). Exhibit 6 shows Neesmith's dashcam footage of the events. Defendants move to exclude the dashcam footage from 1:16:20 to 1:38:00, when the video shows Goodwin begins removing his dog's head. [Doc. 78-1, p. 5]. The officers can be seen infrequently in the footage from 1:16:20 to 1:38:00.[2]

The portions of the exhibits showing the dog's head removal meet the Rule 401 relevancy test because they tend to support the fact that the officers remained on the scene and were monitoring Goodwin's actions as he removed his dog's head, which directly addresses the length of his alleged illegal detention. Further, the videos provide

---

[2] The officers are in the dashcam footage after 1:16:20 during the following segments: 1:16:20—1:16:41; 1:18:50—1:19:06; 1:29:07—1:30:31; and 1:36:37—1:38:00. Starting at 1:16:20, Neesmith is on screen while Goodwin begins to remove his dog's head. Starting at 1:18:50, Neesmith can be seen walking up Goodwin's driveway as Goodwin goes inside his house. Starting at 1:29:07, Hollis and Neesmith stand over Goodwin as he removes his dog's head with a kitchen knife. Starting at 1:36:37, Hollis and Neesmith are on screen for two minutes watching Goodwin place his dog's head in a bag.

a broader context for the alleged arrest and detention. Even the portions of the dashcam footage when the officers are not visible are relevant to the extent that the recordings show Neesmith's patrol car remained on the scene, supporting the fact that Neesmith was still monitoring Goodwin. Thus, in depicting events related to the unlawful arrest claim, the videos are both relevant and probative to issues of consequence, including the way the officers treated Goodwin after the physical altercation. *See Old Chief v. United States*, 519 U.S. 172, 179 (1997) (explaining that "evidentiary relevance under Rule 401" is not "affected by the availability of alternative proofs," such as a defendant's admissions, and that the exclusion of relevant evidence "must rest not on the ground that other evidence has rendered it 'irrelevant,' but on its character as unfairly prejudicial . . .").

Still, aspects of the videos are graphic, emotionally charged, and highly prejudicial because of their power to mislead the jury into potentially awarding damages on Goodwin's dismissed substantive due process claim. Further, parts of the recordings have Goodwin editorializing his arrest—claiming he was forced to sever his dog's head or else go to jail—which increases the likelihood that the videos could mislead the jury into considering the now-dismissed claim. In particular, the graphic images in Exhibit 1, Exhibit 3 after 0:00:45, and Exhibit 4, depicting Goodwin removing his dog's head and placing it in a plastic bag, are simply too graphic and do not directly support Goodwin's unlawful arrest claim. Additionally, the audio in these videos—

Goodwin shouting that he was forced by the officers to remove his dog's head—has a high probability of misleading the jury as to the issue at hand. Accordingly, the video in Exhibit 1, Exhibit 3 after 0:00:45, and Exhibit 4 are excluded pursuant to Rule 403 because of their graphic nature and the substantial likelihood they will unfairly prejudice the jury against the Defendants and/or mislead the jury into considering Goodwin's dismissed substantive due process claim.

However, the parts of Exhibit 6 (the dashcam footage with no audio) that show the officers interacting with Goodwin and provide context for the arrest are relevant and not unduly prejudicial because the segments lack the graphic up-close nature of the other videos. Accordingly, only the portions of Exhibit 6 from 1:22:00 to 1:36:37, except for when the officers appear on the screen at 1:29:07 to 1:30:31, are excluded pursuant to Rule 403 because of those segments' likelihood to mislead the jury and correspondingly low probative value. Fed. R. Evid. 403.

Lastly, Defendants request the Court exclude witness testimony of the dog's head removal and photographic evidence of Goodwin's blood-stained clothes. [Doc. 78-1, pp. 4—5]. The Court agrees that evidence of Goodwin's blood-stained clothes is irrelevant to his unlawful arrest claim. However, evidence of Goodwin interacting with the officers could still be admissible even if his clothes are blood-stained. Likewise, witness testimony is permitted so long as it focuses on Goodwin's interactions with the officers and not Goodwin's allegation that the officers coerced him into removing his

dog's head. Accordingly, the Court declines to exclude all witness testimony of the dog's head removal.

### C. Evidence of Noncompliance with Crawford County's Health Protocols and the Results of the Dog's Rabies Test

Defendants also request the Court exclude any evidence that the removal of the dog's head did not comply with the Crawford County health protocols and results of the dog's rabies test for lack of relevance and being unduly prejudicial. [Doc. 78-1, p. 6]. Like the other evidence discussed above, evidence of non-compliance with health protocols and the results of the rabies test will not assist the trier of fact because it does not qualify as relevant evidence for the unlawful arrest claim. Simply put, these pieces of evidence do not make it more or less probable that an arrest occurred or help determine the duration of the arrest. Accordingly, these pieces of evidence are excluded pursuant to Rule 402. Fed. R. Evid. 402.

## CONCLUSION

Based on the foregoing, Defendants' Motion in Limine [Doc. 78] is **GRANTED in part** and **DENIED in part**. The Court **DENIES** as to Defendants' motion to exclude:

1. Exhibit 3 from 0:00:00 to 0:00:45, a video of Goodwin's physical encounter with the officers.

2. Exhibit 5, a video of Goodwin's physical encounter with the officers.

3. Exhibit 6, Neesmith's patrol car's dashcam footage of the entire incident, from 1:16:20 to 1:22:00, 1:29:07 to 1:30:31, and 1:36:37 to 1:38:00.

4. Witness testimony of the dog's head removal.

The Court **GRANTS** Defendants' motion to exclude:

1. Exhibit 1, a video of the removal of the dog's head.

2. Exhibit 2, a news clip of Goodwin describing his version of the events.

3. Exhibit 3 from 0:00:45 to 0:01:34, a video of the dog's head removal.

4. Exhibit 4, a cleaner version of the part of Exhibit 3 showing the dog's head removal.

5. Exhibit 6, Neesmith's patrol car's dashcam footage of the entire incident, from 1:22:00 to 1:29:07 and 1:30:31 to 1:36:37.

6. Evidence of non-compliance with the Crawford County health protocols.

7. Evidence of results of the dog's rabies test.

8. Evidence solely of Goodwin's blood-stained clothes.

In excluding these pieces of evidence, the Court complies with its "role to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Allison v. McGhan Med. Corp.*, 184 F.3d at 1300, 1311-12 (11th Cir. 1999).

**SO ORDERED**, this 14th day of April, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
